IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


NATIONWIDE INSURANCE COMPANY                                    PLAINTIFF

VS.                                    CIVIL ACTION NO.  2:05CV2040KS-MTP

EDGAR PATTON                                                    DEFENDANT


**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the filing by plaintiff Nationwide Insurance Company ("Nationwide") of a Motion for Summary Judgment on its Complaint for declaratory judgment and on the filing by Nationwide of a Motion for Summary Judgment on the Counterclaims. From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that the Motion for Summary Judgment on the Complaint is not well taken and should be denied and that the Motion for Summary Judgment on the Counterclaims is well taken and should be granted.  The court specifically finds as follows:

FACTUAL BACKGROUND

Nationwide issued a homeowners policy to defendant Edgar Patton, bearing policy number 63 23 HO 197469, with coverage dates of July 20, 2004 to July 20, 2005 (the "Policy"). The insured premises was Mr. Patton's residence located at 184 Hutson Morris in Columbia, Mississippi (the "Patton Residence").  Among other things, the Policy covers damage to the insured premises and personal property caused by fire.  The Policy excludes coverage for

1

intentional acts committed by or at the direction of the insured.  The Policy states that in the event of a loss, the insured must, as often as Nationwide reasonably requires, provide requested records and documents and submit to examinations under oath.  The insured must also submit, within sixty days after a request, a signed, sworn proof of loss setting forth details regarding the damaged property including description, value and amount of loss, as well as all receipts supporting those figures.  The Policy does not provide coverage for all insureds if any insured "either before or after a loss, has: (1) intentionally concealed or misrepresented any material fact or circumstance; or (2) committed any fraud or made false statements relating to such loss."

During a period of approximately one month, two fires occurred at the Patton Residence and Mr. Patton made two claims to Nationwide as a result of those fires.  The first fire took place on October 26, 2004, when a car fire occurred in Mr. Patton's garage, causing damage to the car as well as to personal property located in the garage (the "Car Fire").  Mr. Patton made a claim to Nationwide for personal property damage (the car was not covered by the Policy) and an investigation commenced.  Mr. Patton submitted a Personal Property Inventory for items allegedly damaged in the Car Fire, including a set of golf clubs, a club bag, and a commercial lawnmower used to groom golf courses with an alleged replacement value of approximately $6000-8000.  The total amount of the claim was approximately $6,230.47 (having subtracted the $1000 deductible).[1]

While the Car Fire investigation was continuing, a second fire occurred a few weeks after the Car Fire, on November 27, 2004.  This fire was in the Patton Residence itself and caused

---

[1] According to Mr. Patton, Farm Bureau, the insurer of the automobiles, investigated the fire and concluded that it was caused by an "equipment failure."

2

damage to the structure, but did not destroy it (the "House Fire").  Mr. Patton made another claim to Nationwide, this time for fire damage to the house and to the personal property contained within it.  Nationwide again began an investigation.

During the course of its investigation, Nationwide learned about an incident that had occurred the night before the House Fire.  Nationwide learned that Mr. Patton had gone to Atlanta, Georgia to spend Thanksgiving with his family.  Before he left, he tried to convince his then-wife, Angela Patton,[2] to go with him but she did not want to.  After he realized she would not go with him, he told her that he was going to spray insecticide in the house before he left and that she should not stay at the house because he was worried about her and their baby inhaling toxic fumes.  This struck Mrs. Patton as strange, because she had not seen any bugs in their house.  Mrs. Patton begged Mr. Patton not to spray but he sprayed the insecticide before he left. While Mr. Patton was gone, he called Mrs. Patton numerous times trying to convince her to leave the house.  However, Mrs. Patton decided to stay because she did not think there was any harm[3] and because the baby was sick and she did not want to leave the house.  She stopped answering the phone and did not tell Mr. Patton that she had decided to stay.  During the night of November 25, 2004, Mrs. Patton heard a person in the house.  When she called out, the person fled.  There was a clear liquid substance with a strong-chemical odor, that smelled similar to nail polish remover, that had been spilled throughout the first floor of the house. Mrs. Patton made numerous attempts to contact her husband after this incident, and eventually reached him on his

---

[2] The Pattons were divorced in March 2006.

[3] Mrs. Patton called the manufacturer of the insecticide Mr. Patton had sprayed and was assured that there was no danger in staying.

3

cell phone.  Mr. Patton told her that he had been drinking and could not drive but that he would return home the following day.

Police were called to the scene and they found no sign of forced entry.  Mrs. Patton found that a spare key ordinarily kept outside the house under a mat was gone when she later checked. No one but she and Mr. Patton were supposed to know about the key.  During the week leading up to this event, Mr. Patton told Mrs. Patton that someone had broken into his cousin's house and also their neighbor's house.  In addition, Mr. Patton showed Mrs. Patton a noose that had allegedly been left in their yard, and he told her that someone had written racist comments on a campaign poster that was in their yard.

Mr. Patton did not return the next day.  The Patton Residence was burned the following night, on November 27, 2004, while Mrs. Patton was staying with her mother.  The responding fire department listed the fire as having "suspicious origin."  Mr. Patton returned later that day.

Nationwide requested that Mr. Patton complete a sworn statement of proof of loss and personal property inventory forms for items allegedly damaged in both fires.  Mr. Patton submitted his first Personal Property Inventory for the House Fire on December 27, 2004.  This inventory included the entire household's alleged contents, even though, according to Nationwide, most had not been destroyed or even damaged.

On January 7, 2005, Nationwide wrote to Mr. Patton attaching a loss inventory sheet for him to complete regarding the Car Fire, and requesting that he attach documentation of purchase or ownership for each item claimed.  Also on that date, Nationwide wrote to Mr. Patton enclosing a Proof of Loss form for him to complete for the Car Fire, and requesting that he provide the original purchase receipts for the items he was making a claim on.  Mr. Patton

submitted two Sworn Proofs of Loss for the House Fire on January 14, 2005, listing the total amount claimed under the policy at $307,000.  On January 24, 2005, Nationwide notified Mr. Patton in writing that he had to complete another Sworn Proof of Loss for the Car Fire because the documents had not been completely filled out and there was no notary seal.  That day, Nationwide also notified Mr. Patton in writing that he had to complete another Personal Property Inventory for the Car Fire because he had not provided the required information regarding make, model, style, size, etc. and because he had not included original purchase receipts for the items claimed.

On February 10, 2005, Nationwide notified Mr. Patton in writing that it was rejecting his Personal Property Inventory for the House Fire because he had not included original purchase receipts for the items claimed.  Mr. Patton was told to complete another Personal Property Inventory.

Mr. Patton submitted another two Sworn Proofs of Loss for the House Fire on February 4, 2005, again listing the total amount claimed under the Policy as $307,000.  Mr. Patton also submitted another Personal Property Inventory.  According to Nationwide, on this second inventory the value of multiple items was substantially altered and many more items allegedly destroyed in the fire were added.

Nationwide retained a fire origin and cause investigator to determine the cause of the House Fire.  That investigation concluded the house fire was deliberately set, in a report dated December 9, 2004.

Nationwide issued a reservation of rights letter for Mr. Patton's claim dated February 25, 2005 because of concerns regarding the policy coverage.  Nationwide also requested that Mr. and

5

Mrs. Patton sit for an examination under oath ("EUO") on March 18, 2005.  Mrs. Patton sat for

the EUO on March 18, 2005.  During her EUO, Mrs. Patton testified that numerous items listed

on the Personal Property Inventory submitted by Mr. Patton in connection with the House Fire

were either made up entirely or their values were inflated.

Mr. Patton showed up for his EUO on March 18, 2005 but refused to answer any

questions nor did he produce any of the documents requested.  Rather, he made a prepared

statement on the record regarding Nationwide's alleged breaches of the Policy.  On April 15,

2005, Nationwide's attorney wrote to Mr. Patton requesting that he sit for the required EUO.  On

June 22, 2005, Mr. Patton sat for another EUO.  Again, Mr. Patton failed to submit any requested

documentation.  Mr. Patton made another prepared statement in the beginning of the EUO, but

this time he answered Nationwide's questions (although his answers to many of the questions

were vague and he claimed not to know the answers to many others.)

Nationwide filed this action on August 9, 2005, seeking a declaratory judgment that there

is no coverage under the Policy for any losses resulting from the Car Fire or the House Fire and

that it has no liability towards Mr. Patton whatsoever.  On September 30, 2005, Mr. Patton

answered the Complaint and asserted Counterclaims against Nationwide.  On October 6, 2006,

Nationwide moved for summary judgment on both its Complaint as well as on the

Counterclaims.[4]  Mr. Patton has not responded substantively to the Motions.[5]

SUMMARY JUDGMENT STANDARD

---

[4] In the alternative, Nationwide moved for dismissal of the counterclaims pursuant to Rule 37 of the Federal Rules of Civil Procedure.

[5] Rather, Mr. Patton has twice moved to strike the Motions for Summary Judgment on the ground that they were not timely filed.  Those motions have been denied.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The moving party, however, need not negate the elements of the non-movant's case.  *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the non-movant may not rest on the pleadings, but must "identify specific evidence in the ... record demonstrating that there is a material fact issue concerning the essential elements of its case."  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257.   "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial."  *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995) (citation omitted).

In analyzing a motion for summary judgment, all evidence must be "construed in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative

value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor." *Palmer v. BRG, Inc.*, 498 U.S. 46, 49 n.5 (1990) (*quoting Anderson*, 477 U.S. at 255). Nevertheless, "conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "In such situations, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

<u>ANALYSIS</u>

<u>The Complaint</u>

Nationwide argues that it is entitled to summary judgment on the Complaint because Mr. Patton breached the terms of the Policy in several ways: he refused to sit for an EUO; he made numerous misrepresentations during the course of Nationwide's investigation of his claims; he failed to comply with other post-loss obligations regarding the submission of documentation to support his claims; and he intentionally caused the fires that damaged his property. Each of these arguments will be addressed separately below.

<u>Refusal to Sit for EUO</u>

The Policy requires that in the event of loss, Mr. Patton must submit, as often as Nationwide reasonably requires, to an EUO. The Mississippi Supreme Court has upheld

insurance policy provisions requiring EUO's as "reasonable and valid." *See*, *e.g.*, *Archie v. State Farm Fire & Cas. Co.*, 813 F.Supp. 1208, 1212 (S.D. Miss. 1992); *Monticello Ins. Co.* v. *Mooney*, 733 So. 2d 802, 806 (Miss. 1999); *Allison* v. *State Farm Fire & Cas. Co.*, 543 So. 2d 661, 663 (Miss. 1989). An insured's failure to submit to an EUO or failure to respond to material questions during an EUO is a breach of a condition precedent that renders the insurance policy void as a matter of law. *See United States Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 490 (5th Cir. 1992) *(citing Saucier v. U.S. Fidelity & Guar. Co.*, 765 F.Supp. 334 (S.D. Miss. 1991)); *see also Archie*, 813 F.Supp. at 1212. In this case, Mr. Patton refused to submit to an EUO on March 18, 2005, when he would not answer any questions and simply made a statement on the record. Mr. Patton did, however, eventually sit for an EUO three months later, on June 22, 2005. A reasonable delay in submitting to an EUO may be excused and a subsequent submission to an EUO can cure a breach. *See*, *e.g.*, *Wigginton*, 964 F.2d at 491; *Home Ins. Co. v. Olmstead*, 355 So. 2d 310, 313 (Miss. 1978). Although the court thinks the three-month delay was lengthy, it does not find that it was unreasonable as a matter of law. *See Wigginton*, 964 F.2d at 491 (court expressed doubt that three-month delay would be reasonable although declining to so hold as a matter of law). Although Mr. Patton has not substantively responded to the motion for summary judgment, it appears from his Answer that the reason he did not submit to the first EUO was because he believed that Nationwide had already repudiated his claim and that their breach of the Policy entitled him to stop performing under the Policy. The court finds that Mr. Patton's failure to sit for the first EUO does not constitute a breach of the Policy and does not entitle Nationwide to summary judgment.

Nationwide also argues that the June 22, 2005 EUO cannot cure the earlier breach because

Mr. Patton did not give meaningful responses to Nationwide's questions.  However, Mr. Patton did sit for the EUO and he did submit to Nationwide's questioning.  According to Mr. Patton's Answer, he answered all the questions he could, and appropriately told Nationwide where he did not recall or know an answer.  Therefore, Nationwide is not entitled to summary judgment on this basis.

Mr. Patton's Alleged Misrepresentations

The majority of the misrepresentations allegedly made by Mr. Patton relate to the existence and value of various items listed on the claims he submitted to Nationwide.  Mrs. Patton, during her EUO and deposition, testified that many of these items were not in the house at all, or their value was inflated.  Essentially, it's a "he-said, she-said" situation.  The court finds that with respect to these items, there is genuine issue of material fact as to whether misrepresentations were made constituting a breach of the Policy.

Nationwide also contends that Mr. Patton misrepresented his income and his employment.  According to the affidavit of Mr. Larry Whitehead, claims representative for Nationwide, Mr. Patton told him in a recorded interview that at the time of the fire, he had been employed by American Oil[6] for six years as a sales representative and reported his income as $80,000.00 per year.  On another occasion Mr. Patton told Mr. Robert Deforn, a Nationwide interviewer, that he was a human resources manager/sales director for American Oil, although he did not discuss his income in this interview.[7]  According to American Lubricants, Mr. Patton was not a manager nor

---

[6] The company's correct name is American Lubricants Company.

[7] A transcript of this interview was provided to the court, but no transcript of interview with Mr. Whitehead has been provided to the court.

even an employee; rather, he was an independent contractor who did not earn a salary but was paid solely by commission.  According to American Lubricants, the most Mr. Patton earned in any whole year for the years 2000 through 2004 was $177.03.  At his EUO, Mr. Patton claimed that he could not recall what he earned at American Lubricants.  In his Answer, Mr. Patton avers that he had numerous other sources of income (besides American Lubricants), including working for his family's businesses, and that he provided this information to Nationwide.

The Mississippi Supreme Court has repeatedly held an insurer is permitted to inquire into an insured's finances during the course of investigating a claim and in particular, is entitled to inquire into an insured's finances where arson is suspected, in order to determine a possible motive for a fire.  *Monticello Ins. Co. v. Mooney*, 733 So. 2d 802, 806 (Miss. 1999).  *See also U.S. Fidelity & Guar. Co. v. Conaway*, 674 F.Supp. 1270, 1273 (N.D. Miss. 1987), *aff'd*, 849 F.2d 1469 (5th Cir. 1988).  Knowingly providing false information or failing to provide truthful answers to material questions will defeat coverage under an insurance policy.  *Edmiston v. Schellenger*, 343 So. 2d 465, 467 (Miss. 1977).  Although Nationwide has provided this court with evidence that Mr. Patton may have misrepresented his income and employment during the course of their investigation of the fires, Mr. Patton disputes this in his Answer, and the court is reluctant to void the Policy and grant summary judgment in light of the fact that Mr. Patton has not responded to the Motions for Summary Judgment**.**  Accordingly, summary judgment on this ground is denied.

<u>Refusal to Submit Documentation</u>

The Policy states that in the event of a loss, the insured must, as often as Nationwide reasonably requires, provide requested records and documents and submit to examinations under oath.  The insured must also submit, within sixty days after a request, a signed, sworn proof of

loss setting forth details regarding the damaged property including description, value and amount of loss, as well as all receipts supporting those figures.  Nationwide contends that Mr. Patton failed to submit requested and required documentation in support of his claims and that this breach of the Policy entitles them to summary judgment - specifically, that Mr. Patton failed to submit receipts showing purchases before the fire (rather, he provided estimates for future purchases).[8]  Mr. Patton, however, claims that he produced all the information in his possession. The court finds that there is a genuine issue of material fact as to whether Mr. Patton complied with the Policy regarding submission of required documentation, and therefore summary judgment is denied.

The Fires

        Based on the report of the responding fire department, as well as the fire cause and origin expert, Mrs. Patton's statements regarding alleged misrepresentations on the insurance claims, the suspicious circumstances surrounding the fires, and Mr. Patton's alleged financial difficulties before the fires, Nationwide contends that Mr. Patton intentionally caused the fires that damaged his property, constituting a breach of the policy and entitling them to summary judgment. Obviously, however, Mr. Patton disagrees and denies that he intentionally set either fire and he denies that he had any motive to set the fires.  The court finds that Nationwide has failed to meet its burden of showing a lack of genuine issue of material fact as to whether Mr. Patton intentionally set the fires and therefore summary judgment for Nationwide is denied.

The Counterclaims

_____

        [8] One of these estimates - from Hudson's Treasure Hunt in Hattiesburg, Mississippi - was allegedly obtained by Mr. Patton by impersonating a Nationwide adjuster who was assisting an insured.  Mr. Patton denies that he impersonated the adjuster.

In his Answer, Mr. Patton has asserted counterclaims against Nationwide for - to the best of the court's ability to discern from the Answer - race discrimination and civil rights violations under the Fair Housing Act, 42 U.S.C. § 3601 *et. seq.* and 42 U.S.C. §£ 1981 and 1983, and claims for breach of contract, bad faith breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and misrepresentation, violation of his right to privacy and negligence.  Each claim will be addressed separately below.

<u>Fair Housing Act</u>

This claim can be disposed of easily.  The Fair Housing Act does not create a right of action for allegations of improper claims handling.  *Riley v. Transamerica Ins. Grp., et al.*, 923 F.Supp. 882, 888 (E.D. La. 1996), *aff'd*, 117 F.3d 1416 (5th Cir. 1997).  Some courts have held that the Fair Housing Act may apply to discrimination in the purchase of homeowners insurance, because obtaining such insurance is directly connected to the ability to purchase a home.  *See id.* (discussing cases).  That is not the case here, as Nationwide issued a homeowners' policy to Mr. Patton, and Mr. Patton's claims are premised on Nationwide's handling of his claims.  Accordingly, summary judgment is granted to Nationwide on this claim.

<u>Sections 1981 and 1983</u>

42 U.S.C. § 1983 imposes liability upon anyone who "under color" of state law causes another person's rights under the Constitution and laws to be violated.  As Nationwide correctly argues, this section requires that the defendant be acting under color of state law in order to be liable for alleged civil rights violations.  There is no such allegation in this case, nor is there any evidence to suggest that Nationwide, a private company, acted under color of state law.  Accordingly, summary judgment for defendants on this claim is granted.

Mr. Patton also cites to 42 U.S.C. § 1981.  Unlike section 1983, this section does not require that the defendant be acting under color of state law; private citizens may be liable.  *See, e.g., Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan*, 518 F.Supp. 993, 1008 (S.D. Tex. 1978) (citing cases).  Although it is not entirely clear what Mr. Patton's allegations are, it appears that he is alleging that he was discriminated against by Nationwide because of his race - specifically, that his claims were improperly investigated and denied by Nationwide because of his race.  There is no evidence whatsoever in the record to support this claim.  Rather, the record reflects that Nationwide reasonably investigated Mr. Patton's claims and that based on its reasonable belief that Mr. Patton intentionally set the fires, as well as Mrs. Patton's testimony regarding alleged misrepresentations on the claims forms, it filed this declaratory judgment action seeking a declaration that it is not obligated under the Policy.  There is no evidence in the record to support an allegation that Nationwide's actions were motivated in any way by race or that any of Mr. Patton's civil rights have been violated.[9]  Accordingly, summary judgment is granted for Nationwide on this claim.

Breach of Contract

Mr. Patton alleges (in responses to Interrogatories) that Nationwide breached the Policy by failing to comply with the provision of the "Fair Claims Act" requiring that an insurance carrier has thirty days to confirm or deny coverage under an insurance policy.  First, the court notes - as Nationwide has pointed out - that there is no such statute as the "Fair Claims Act."  If Mr. Patton

---

[9] In this respect, the court emphasizes that Mr. Patton has failed to respond substantively to the Motions for Summary Judgment and has failed to identify any evidence in the record to support his claims.  Accordingly, the only record before the court are the pleadings with exhibits and any materials attached as exhibits to the Motions for Summary Judgment.

is referring to the model Unfair Claims Settlement Practices Act suggested by the National Association of Insurance Commissioners, that has not been adopted in Mississippi.  Moreover, the alleged factual basis for the breach of contract claim is "Nationwide's own admission, and Nationwide's policy provision EZ-5(b)."   Mr. Patton has not identified what alleged admission he is referring to, and Nationwide obviously denies ever admitting that it breached its contract with Mr. Patton.  In addition, there is no provision EZ-5(b) in the Policy.  Mr. Patton has not identified any other alleged breaches of the Policy committed by Nationwide.  And the court notes that the record reflects that Nationwide reasonably investigated Mr. Patton's claims and certainly had an arguable basis for not paying the claims.  Moreover, Nationwide has not denied the claims but rather has sought a declaratory judgment that it is not obligated for those claims, as it is legally entitled to do.  Accordingly, summary judgment for Nationwide is granted on the breach of contract claim.

Bad Faith Breach of Contract

In order to prevail upon a claim of bad faith, Mr. Patton must prove that Nationwide lacked an arguable basis for its actions.  *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003).  *See also Sessoms v. Allstate Ins. Co.*, 634 So. 2d 516, 519 (Miss. 1994).  This is a higher standard than mere negligence; in order to prove bad faith, plaintiff must prove the negligence in conducting an investigation of his claim was such that a proper investigation "would easily adduce evidence showing its defenses to be without merit."  *McKneely*, 862 So. 2d at 534.

Mr. Patton simply cannot make this showing.  As discussed above, there are no facts to support a claim for breach of contract, so obviously there are no facts to support a claim for bad faith breach of contract.  Accordingly, summary judgment is granted to Nationwide on this claim.

15

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Under Mississippi law, all contracts contain an implied covenant of good faith and fair dealing. *Ferrara v. Walters*, 919 So. 2d 876, 883 (Miss. 2005), *reh'g denied*, 2006 Miss. LEXIS 73 (Miss. Feb. 2, 2006). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Id.* (*quoting Cenac v. Murray*, 609 So. 2d 1257, 1272 (Miss. 1992)). As discussed above with respect to the claim for bad faith breach of contract, there is simply no evidence to support this claim and summary judgment for Nationwide is granted.

<u>Fraud and Misrepresentation</u>

Mr. Patton alleges that Nationwide took Mrs. Patton's EUO without his knowledge, then providing her with a copy of the transcript and errata page for her review and signature. Mr. Patton also apparently alleges that Nationwide colluded with Mrs. Patton in order to obtain testimony damaging to him. Mr. Patton further contends that Nationwide colluded with Mrs. Patton by using an authorization form signed only by Mrs. Patton to obtain personal information about him, although he does not state exactly what personal information was obtained. Mr. Patton also complains that Nationwide never provided him with a copy of the EUO transcripts for review and signing.

In order to state a cause of action for fraud under Mississippi law, Mr. Patton must show: a false and material misrepresentation by Nationwide; that Nationwide intended that he act on the representation in a matter reasonably contemplated; that he did not know the statement was false or was ignorant of the truth; that he had a right to rely on the statement and in fact relied on the

16

statement as true; and that he suffered proximate injury as a result. *See Sumler v. East Ford, Inc.*, 915 So. 2d 1081, 1087-88 (Miss. Ct. App. 2005) (citation omitted). Fraud must be proven by clear and convincing evidence. *Holland v. Mayfield*, 826 So. 2d 664, 674 (Miss. 2002) (citations omitted).

Even assuming that the above allegations are sufficiently specific to comply with Rule 9(b) of the Federal Rules of Civil Procedure, the court finds that they are insufficient as a matter of law. Notably, Mr. Patton has failed to allege that any misrepresentations were made to *him*, a requirement of a cause of action for fraud. Moreover, the allegations of collusion between Nationwide and Mrs. Patton are without any factual support in the record. Nationwide was within its rights to conduct an EUO of Mrs. Patton without Mr. Patton present, and to provide Mrs. Patton with a copy of her EUO transcript for review and signing. Nationwide was not under an obligation to provide Mr. Patton with a copy of his EUO transcript nor of his wife's EUO transcript prior to his lawsuit being filed.[10] As for the authorization, as Nationwide points out, the record indicates that Mr. Patton himself signed two authorizations allowing Nationwide to obtain information about him - the same information covered by the authorization signed by Mrs. Patton.

<u>Right to Privacy</u>

Mr. Patton alleges that Nationwide invaded his privacy rights by obtaining personal information about him through an authorization signed by his former wife. For the reasons discussed with respect to the fraud and misrepresentation claim, there are no facts to support this claim and summary judgment for Nationwide is granted.

---

[10] As Nationwide points out, during the course of discovery Mr. Patton has never asked for copies of his or Mrs. Patton's EUO transcripts.

Negligence

To prevail on a claim of negligence, plaintiff must prove: 1) a duty owed; 2) a breach of duty; 3) proximate cause; and 4) damages. *Carpenter v. Nobile*, 620 So. 2d 961, 964 (Miss. 1993). Mr. Patton alleges in his Answer that the same facts supporting his claim for fraud and misrepresentation also support a claim for negligence. However, it is unclear how those facts constitute a breach of any duty owed by Nationwide to Mr. Patton, either under the Policy or otherwise. The court further notes that to the extent Mr. Patton might be claiming that Nationwide's investigation of his claims was negligent, there is similarly no evidence in the record before this court to support such a claim. Therefore, summary judgment for Nationwide on this claim is granted.

IT IS, THEREFORE, ORDERED AND ADJUDGED that plaintiff's motion for summary judgment on the Complaint [**# 49**] is denied, and plaintiff's motion for summary judgment on the Counterclaims [**# 51**] is granted. Defendant's counterclaims are dismissed with prejudice.

SO ORDERED and ADJUDGED on this, the 30th day of January, 2007.

s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE

18